JD:JEA
F.#2017R01918

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF APPLE IPHONE 5, MODEL NUMBER ME486LL/A, IMEI NUMBER 013440000712904 | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE |

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, MATTHEW ARAZOSA, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for a search warrant authorizing the examination of property—an
electronic device—which is currently in law enforcement possession, and the extraction from
that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Department of Homeland Security, Homeland
Security Investigations ("HSI"), and have been since August 2016.  I am responsible for
conducting and assisting in investigations into the activities of individuals and criminal groups
responsible for narcotics trafficking.  I have participated in investigations involving search
warrants and arrest warrants.  As a result of my training and experience, I am familiar with the
techniques and methods of operation used by individuals involved in criminal activity to conceal
their activities from detection by law enforcement authorities.  I have participated in

investigations involving search warrants and arrest warrants, including tracking warrants and warrants seeking phone location information.

3.    I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from my personal participation in this investigation and reports made to me by other law enforcement authorities. When I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

4.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.    HSI is investigating the circumstances surrounding a seizure of 4.0037 kilograms of cocaine at John F. Kennedy International Airport ("JFK") on October 26, 2017, for possible violations of narcotics trafficking laws, including importation of cocaine and possession of cocaine with intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1), 952(a), and 960(a)(1).  Based on the facts set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence and instrumentalities of violations of these offenses, as described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.    The property to be searched is an APPLE IPHONE 5, MODEL NUMBER ME486LL/A, IMEI NUMBER 013440000712904, hereinafter the "Device."  The Device is currently in the custody of HSI within the Eastern District of New York.

2

7.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

8.     On or about October 26, 2017, an individual named Aderli Veloz-Vargas arrived at JFK aboard Delta Airlines flight number 500 from Santo Domingo, Dominican Republic.  He was selected for examination by U.S. Customs and Border Protection ("CBP") officers assigned to JFK and claimed ownership of a black "Nautica" suitcase.  As part of the examination, CBP officers examined the contents of the suitcase and discovered very little clothing, despite the fact that Veloz-Vargas was visiting the United States for approximately two weeks.

9.     The CBP officers also noticed that Veloz-Vargas was in possession of a duty free bag containing two blue boxes of Brual brand rum, which he failed to present for inspection.  Veloz-Vargas presented a receipt and stated that he had purchased the boxes of liquor at a duty free shop prior to boarding his flight.  The Dufry store receipt showed that Veloz-Vargas paid $300 cash for the two boxes of Brugal Siglo de Oro Rum, which were priced at $140 per box.

10.     A CBP officer attempted to inspect the boxes but encountered difficulty in opening the boxes because the lids were sealed with glue.  A CBP officer pried open the boxes and discovered four heavily taped bricks inside and no bottles of liquor.  The officer probed one of the bricks and discovered a white powdery substance.  The substance was field tested and determined to be cocaine.  In total, the four bricks contained an approximate net weight of 4.0037 kilograms of cocaine.

3

11.    HSI was notified and responded.  HSI placed Veloz-Vargas under arrest, and he waived his <u>Miranda</u> rights and agreed to speak to the agents.  Veloz-Vargas said in sum and substance that a friend, who he referred to as "Primo," in the Dominican Republic recruited him by asking him if he wanted to make money.  Veloz-Vargas explained that Primo was approximately 28 years old and that he drives a blue Honda Civic in the Dominican Republic. Primo agreed to pay for his ticket and gave him instructions on what to do once he arrived at JFK.

12.    According to Veloz-Vargas, Primo told him that once he arrived at JFK, he should exit the airport, make a left, and text a "crown" emoji to a designated number.  Veloz-Vargas further explained that Primo described Veloz-Vargas's appearance to the individual designated to pick up Veloz-Vargas and that he should wait until the individual approached him at JFK.

13.    Veloz-Vargas stated that he communicated with Primo through the messenger service known as "WhatsApp."  Based on my education, training and experience, individuals involved in narcotics trafficking typically communicate with one another about the scheme using their mobile electronic devices, including through telephone calls, text messages, electronic mails, and instant messaging applications, such as WhatsApp.

14.    The Device is currently in the lawful possession of HSI.  It came into HSI's possession incident to Veloz-Vargas's arrest.   Therefore, while HSI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

4

15.     The Device is currently in the possession of HSI within the Eastern District of New York.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of HSI.[1]

## TECHNICAL TERMS

16.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

---

[1] On November 21, 2017, a grand jury sitting in the Eastern District of New York returned a two-count indictment against Veloz-Vargas charging him with the importation of cocaine into the United States, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1), and with possession of cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).  See United States v. Veloz-Vargas, 17-CR-646 (AMD).

dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

6

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its

current location.  It often contains records the locations where it has been.  Some

GPS navigation devices can give a user driving or walking directions to another

location.  These devices can contain records of the addresses or locations involved

in such navigation.  The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite

contains an extremely accurate clock.  Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers.  These signals are sent by radio, using specifications that

are publicly available.  A GPS antenna on Earth can receive those signals.  When

a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and

sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs.  Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs

usually include a memory card or other removable storage media for storing data

and a keyboard and/or touch screen for entering data.  Removable storage media

include various types of flash memory cards or miniature hard drives.  This

removable storage media can store any digital data.  Most PDAs run computer

software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets,

7

and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

19.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

9

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21.  *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

10

## CONCLUSION

22.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

_____

MATTHEW ARAZOSA
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on December 1, 2017:


_____
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

11

## ATTACHMENT A

The property to be searched is an APPLE IPHONE 5, MODEL NUMBER ME486LL/A, IMEI NUMBER 013440000712904, hereinafter the "Device."  The Device is currently in the custody of HSI within the Eastern District of New York.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1), 952(a) and 960(a)(1) and involve Aderli Veloz-Vargas since April 1, 2017, including:

      a.   All records and information on the Device described in Attachment A, including names and telephone numbers, as well as the contents of all call logs, text messages, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, Facebook or other social media posts or messages, Internet activity (including browser history, web page logs and search terms entered by the user), and other electronic media constituting evidence, fruits or instrumentalities of narcotics trafficking in violation of;

      b.   All contact lists;

      c.   Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      d.   Any information recording Veloz-Vargas's schedule or travel from Santo Domingo, Dominican Republic;

      e.   Passwords, encryption keys and other access devices that may be necessary to access the Device; and

      f.   Contextual information necessary to understand the evidence described in this attachment;

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    17-MJ-1018 |
| IN THE MATTER OF THE SEARCH OF APPLE IPHONE | ) | |
| 5, MODEL ME486LL/A, IMEI NUMBER 013440000712904 | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____December 14, 2017_____ *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____the Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____           _____
                                                                                       *Judge's signature*

City and state:      _____Brooklyn, New York_____           _____Hon. Robert M. Levy          U.S.M.J._____
                                                                                          *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>   17-MJ-1018 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

 

_____
*Executing officer's signature*

_____
*Printed name and title*